RECEIVED

MAR 1 0 2014

TONY R. MOORE, CLERK
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE, LOUISIANA

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAFAYETTE DIVISION

BERNADETTE RUBIN                          CIVIL ACTION NO. 13-1611

VERSUS                                    JUDGE DOHERTY

BROOKSHIRE GROCERY CO.,                   MAGISTRATE JUDGE HILL
    d/b/a SUPER 1 FOODS, ET AL.

**MEMORANDUM RULING**

Pending before this Court is the "Motion for Summary Judgment" [Doc. 20] filed by third-party defendants The Ridgemont Company ("Ridgemont") and Amerisure Mutual Insurance Company ("Amerisure") (collectively, "the movants"). In their motion, Ridgemont and Amerisure seek dismissal of the claims filed by defendant and third-party plaintiff Brookshire Grocery Co., d/b/a Super 1 Foods ("Brookshire") against them on two grounds: (1) any contractual indemnification obligation owed by Ridgemont to Brookshire is null and void under Louisiana law, and (2) the Amerisure policy issued to Ridgemont does not provide insurance coverage to Brookshire because Brookshire is not an insured under that policy, all as more fully explained hereinbelow. The motion is opposed by defendant and third-party plaintiff Brookshire [Doc. 23], and Ridgemont and Amerisure have filed a "Motion for Leave of Court to File Reply Memorandum in Support of their Motion for Summary Judgment" [Doc. 26], which is herein GRANTED.

**I.      Factual and Procedural History**

The instant litigation arises out of personal injuries allegedly sustained by plaintiff Bernadette Rubin in a slip-and-fall accident at a Super 1 Foods grocery store – owned by Brookshire – on May

21, 2012.[1]  The store at which the alleged slip and fall occurred was built by Ridgemont, a general

contractor, pursuant to a June 13, 2011 construction contract between Ridgemont and Brookshire

(the "Contract").  The Contract contains the following indemnity and insurance provisions:

> To the fullest extent permitted by law, the contractor [Ridgemont] shall indemnify
> and hold harmless Brookshire and their agents and employees from and against all
> claims, damages, losses and expenses, including but not limited to attorneys' fees but
> only to the extent arising out of or resulting from the performance of the work,
> provided that any such claim, damage, loss or expense (1) is attributable to bodily
> injury, sickness, disease or death, or to injury to or destruction of tangible property
> (other than the work itself) including the loss of use resulting therefrom, and (2) *is
> caused in whole or in part by any negligent act or omission of the contractor, any
> subcontractor, anyone directly or indirectly employed by any of them or anyone for
> whose acts any of them may be liable to the extent that it is determined that
> Brookshire or any of the other indemnified parties are concurrently negligent with
> contractor, then each party share [sic] pay its pro-rata shares of the damages and
> costs of defending the claims.*  Such obligation shall not be construed to negate,
> abridge, or otherwise reduce any other right or obligation of indemnity which would
> otherwise exists as to any part or person described in this paragraph. . . . .[2]

In connection with Ridgemont's construction of the grocery store in question, Amerisure

issued a policy of insurance to Ridgemont (the "Amerisure policy") with a policy period of

November 1, 2011 to November 1, 2012.  Under the Amerisure policy, Ridgemont is the named

insured.  Although the parties have not provided the Court with the date the grocery store was

completed, it is undisputed that Ridgemont's work was completed at the time the alleged damages

in this case arose or manifested themselves.

After her accident, plaintiff Bernadette Rubin filed suit against Brookshire and other

---

[1] In the underlying claim, the plaintiff alleges she slipped and fell in a puddle of a clear substance, most likely water that had leaked from the roof of the building, as it was raining at the time of the accident, "and there was a leak in the roof which allowed water to drip into the store and onto the floor."  *See* plaintiff's Petition for Damages, Doc. 1, at ¶2-4.

[2] *See* "Contract and General Conditions" between Brookshire and Ridgemont, filed under seal as an exhibit to Brookshire's opposition brief, Doc. 23, at ¶10.16 (emphasis added).

defendants for damages for her injuries.  Defendant Brookshire filed a third-party complaint against Ridgemont and Ridgemont's liability insurer, Amerisure, alleging, *inter alia*, (1) Ridgemont owes Brookshire tort contribution because Brookshire was at fault; (2) Ridgemont contractually agreed to indemnify and procure insurance coverage for Brookshire; and (3) Brookshire is entitled to insurance coverage for the plaintiff's injuries under the Amerisure policy issued to Ridgemont.  The facts relevant to the instant motion are largely undisputed and involve issues of contract and insurance policy interpretation.

The Court notes in the instant motion, the movants fail to clearly argue which specific *claims* they seek to have dismissed, and instead, argue for the following relief:

> For three reasons, Ridgemont and Amerisure move for summary judgment.  First, under Louisiana law, Brookshire will be liable only for its percentage of negligence and has no right of contribution against another alleged tortfeasor.  Second, Brookshire's claims for indemnity and insurance coverage under the contract between Brookshire and Ridgemont are null and void under La. Rev. Stat. 9:2780.1.  Third, Brookshire is not an insured under the Amerisure policy issued to Ridgemont.[3]

Based upon the foregoing, this Court will assume Ridgemont and Amerisure seek dismissal of *all of the claims* alleged by Brookshire against Ridgemont and Amerisure, despite failing to specify which claims have been pled against which defendant, on grounds Brookshire is not entitled to contractual indemnification for Brookshire's own negligence, and is not entitled to insurance coverage under the Amerisure policy issued to Ridgemont.  Because of the lack of clarity – beginning with the lack of clarity in the motion itself as to what claims the movants seek to have dismissed – the instant Ruling will be narrowly tailored to address only the specific arguments set forth in the motion.  For this reason, it is unclear whether all of the claims alleged by Brookshire

---

[3] *See* memorandum in support of motion for summary judgment, Doc. 20, at p.2.

-3-

against Ridgemont and Amerisure are disposed of in this Ruling, and the parties will be required to clarify whether any claims remain pending after the Court's rulings contained herein upon receipt of this Ruling.

## II.    Summary Judgment Standard

"A party against whom a claim, counterclaim, or cross-claim is asserted or a declaratory judgment is sought may, at any time, move with or without supporting affidavits for a summary judgment in the party's favor as to all or any part thereof." Fed. R. Civ. Proc. 56(b).  Summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. Proc. 56(c).

> Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein. . . . When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial.  If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.  Fed. R. Civ. Proc. 56(e).

> As the Fifth Circuit has pointed out:

> This burden is not satisfied with 'some metaphysical doubt as to the material facts,' by 'conclusory allegations,' by 'unsubstantiated assertions,' or by only a 'scintilla' of evidence.  We resolve factual controversies in favor of the nonmoving party, but only when there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts. *We do not, however, in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts.* ...[S]ummary judgment is appropriate in *any* case "where critical evidence is so weak or tenuous on an essential fact that it could not support a judgment in favor of the nonmovant." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (*en banc*)(citations omitted)(emphasis in original).

-4-

In evaluating the evidence provided in support of, and in opposition to a Motion for Summary Judgment, "[t]he court must view facts and inferences in the light most favorable to the party opposing the motion." *Hunt v. Rapides Healthcare Sys. LLC*, 277 F.3d 757, 762 (5th Cir. 2001). "A factual dispute precludes a grant of summary judgment if the evidence would permit a reasonable jury to return a verdict for the non-moving party." Id. In evaluating evidence to determine whether a factual dispute exists, "[c]redibility determinations are not part of the summary judgment analysis." Id. To the contrary, "[i]n reviewing all the evidence, the court must disregard all evidence favorable to the moving party *that the jury is not required to believe*, and should give credence to the evidence favoring the non-moving party, *as well as that evidence supporting the moving party that is uncontradicted and unimpeached*." *Roberts v. Cardinal Servs.*, 266 F.3d 368, 373 (5th Cir. 2001) (emphases added).

## III.    Law and Analysis

The parties do not appear to dispute that Louisiana law applies to the interpretation of both the Contract between Ridgemont and Brookshire and the Amerisure policy.[4]  Additionally, before addressing the substance of the issues presented, this Court also will assume, for these purposes, the underlying claims of the plaintiff against Brookshire are governed by the Louisiana merchant liability

---

[4] Louisiana courts construe insurance policies like any other contract, according to the parties' intent as expressed in the words of the policy. La. Civ. Code art. 2045-2048. An insurance policy must be "construed according to the entirety of its terms and conditions as set forth in the policy, and as amplified, extended, or modified by any rider, endorsement, or application attached to or made a part of the policy." La. Rev. Stat. §22:881 (West 2014).

Additionally, Louisiana statutory law requires that Louisiana law shall apply to all construction contracts to be performed in the state of Louisiana. *See* La. Rev. Stat. §9:2870.1 (D) ("Notwithstanding any contractual provision to the contrary, the laws of the state of Louisiana shall apply to and govern any construction contract to be performed in this state and any motor carrier transportation contract relative to loading or unloading activities, or any services incidental thereto, which occur in this state. Any provision, covenant, or clause in such contracts which conflicts with the provisions of this Section shall be null, void, and unenforceable.").

statute, contained in La. Rev. Stat. §9:2800.6.[5]  The Louisiana Supreme Court has held under this

statute, the term "constructive notice" requires a temporal element, that is, the claimant must show

the [hazardous] condition existed "*for some time period prior to the fall.*" *White v. Wal-Mart Stores,*

*Inc.*, 699 So.2d 1081, 1084-85 (La. 1997).  Consequently, whether Brookshire will have any liability

---

[5] La. Rev. Stat. §9:2800.6 states:

A.   A merchant owes a duty to persons who use his premises to exercise reasonable care to keep his aisles, passageways, and floors in a reasonably safe condition. This duty includes a reasonable effort to keep the premises free of any hazardous conditions which reasonably might give rise to damage.

B.   In a negligence claim brought against a merchant by a person lawfully on the merchant's premises for damages as a result of an injury, death, or loss sustained because of a fall due to a condition existing in or on a merchant's premises, the claimant shall have the burden of proving, in addition to all other elements of his cause of action, all of the following:

(1)   The condition presented an unreasonable risk of harm to the claimant and that risk of harm was reasonably foreseeable.

(2)   The merchant either created or had actual or constructive notice of the condition which caused the damage, prior to the occurrence.

(3)   The merchant failed to exercise reasonable care. In determining reasonable care, the absence of a written or verbal uniform cleanup or safety procedure is insufficient, alone, to prove failure to exercise reasonable care.

C.   Definitions:

(1)   "Constructive notice" means the claimant has proven that the condition existed for such a period of time that it would have been discovered if the merchant had exercised reasonable care. The presence of an employee of the merchant in the vicinity in which the condition exists does not, alone, constitute constructive notice, unless it is shown that the employee knew, or in the exercise of reasonable care should have known, of the condition.

(2)   "Merchant" means one whose business is to sell goods, foods, wares, or merchandise at a fixed place of business. For purposes of this Section, a merchant includes an innkeeper with respect to those areas or aspects of the premises which are similar to those of a merchant, including but not limited to shops, restaurants, and lobby areas of or within the hotel, motel, or inn.

D.   Nothing herein shall affect any liability which a merchant may have under Civil Code Arts. 660, 667, 669, 2317, 2322, or 2695.

La. Rev. Stat. §9:2800.6 (West 2013).

~~to the plaintiff on the underlying claim is unknown to the Court at this time, and will require~~ consideration of a number of issues – many of them factual – before such a determination can be made.  It is against this background that the instant motion is urged.

1.      **Tort Contribution and Contractual Indemnity**

In their motion, the movants argue at the time the Contract was entered into between Ridgemont and Brookshire on June 13, 2011, and also at the time of the plaintiff's May 21, 2012 accident in the Super 1 Foods grocery store, La. Rev. Stat. §9:2780.1 prohibited certain indemnification obligations in construction contracts.  Specifically, in 2010, the Louisiana legislature enacted La. Rev. Stat. §9:2780.1, which, on its face, became effective and applicable to contracts entered into on or after January 1, 2011 and is therefore applicable to the Contract between Ridgemont and Brookshire.  *See Chevron USA, Inc. v. Aker Maritime, Inc.*, 689 F.3d 497, 502 n.3 ("In 2010, the Louisiana legislature passed a bill that will void, as against public policy, some indemnity clauses that seek to shift liability from an indemnitee's negligence, but this only applies to contracts entered into after January 1, 2011."), *citing* La. Rev. Stat. §9:2780.1(F).

The relevant provisions of §9:2780.1 are as follows:[6]

**§ 2780.1. Certain contract provisions invalid; motor carrier transportation contracts; construction contracts**

A. For purposes of this Section, the following terms have the meanings ascribed to them by this Subsection, except where the context clearly indicates otherwise:

[ . . . ]

---

[6] The version of the statute in effect at the time the Contract was confected and at the time of the plaintiff's slip and fall is the version of the statute cited by the movants and the Court.  In its opposition brief, Brookshire argues application of an amended version of the statute, which did not become effective until June 7, 2012, roughly two weeks after the plaintiff's 21, 2012 accident.  However, for the purposes of the instant motion, the relevant language applicable to the indemnification issue is largely the same in both versions of the statute.

(2)(a) "Construction contract" shall mean any agreement for the design, construction, alteration, renovation, repair, or maintenance of a building, structure, highway, road, bridge, water line, sewer line, oil line, gas line, appurtenance, or other improvement to real property, including any moving, demolition, or excavation, except that no deed, lease, easement, license, or other instrument granting an interest in or the right to possess property will be deemed to be a construction contract even if the instrument includes the right to design, construct, alter, renovate, repair, or maintain improvements on such real property.

[ . . . ]

(3) "Indemnitee" means any named party in the contract to whom indemnification is owed pursuant to the terms of the contract.

(4) "Indemnitor" means any party to the contract who obligates himself to provide indemnification pursuant to the terms of the contract.

(5) "Third party" means any party not subject to the contractual obligations between the indemnitee and indemnitor.

B. Notwithstanding any provision of law to the contrary, *any provision, clause, covenant, or agreement contained in, collateral to, or affecting a* motor carrier transportation contract or *construction contract which purports to indemnify, defend, or hold harmless, or has the effect of indemnifying, defending, or holding harmless, the indemnitee from or against any liability for loss or damage resulting from the negligence or intentional acts or omissions of the indemnitee, an agent or employee of the indemnitee, or a third party over which the indemnitor has no control is contrary to the public policy of this state and is null, void, and unenforceable.*

C. Notwithstanding any provision of law to the contrary, *any provision, clause, covenant, or agreement contained in, collateral to, or affecting a* motor carrier transportation contract or *construction contract which purports to require an indemnitor to procure liability insurance covering the acts or omissions or both of the indemnitee, its employees or agents, or the acts or omissions of a third party over whom the indemnitor has no control is null, void, and unenforceable. However, nothing in this Section shall be construed to prevent the indemnitee from requiring the indemnitor to provide proof of insurance for obligations covered by the contract.*

As stated previously, the Contract between Ridgemont and Brookshire contains the following

indemnity and insurance provisions:

> To the fullest extent permitted by law, the contractor [Ridgemont] shall indemnify and hold harmless Brookshire and their agents and employees from and against all claims, damages, losses and expenses, including but not limited to attorneys' fees but only to the extent arising out of or resulting from the performance of the work, provided that any such claim, damage, loss or expense (1) is attributable to bodily injury, sickness, disease or death, or to injury to or destruction of tangible property (other than the work itself) including the loss of use resulting therefrom, and (2) ***is caused in whole or in part by any negligent act or omission of the contractor, any subcontractor, anyone directly or indirectly employed by any of them or anyone for whose acts any of them may be liable to the extent that it is determined that Brookshire or any of the other indemnified parties are concurrently negligent with contractor, then each party share [sic] pay its pro-rata shares of the damages and costs of defending the claims.*** Such obligation shall not be construed to negate, abridge, or otherwise reduce any other right or obligation of indemnity which would otherwise exists as to any part or person described in this paragraph. . . . . [7]

In their motion, the movants argue the Contract between Ridgemont and Brookshire is clearly a "construction contract" under the terms of La. Rev. Stat. §9:2780.1(A)(2)(a), and, furthermore, "any contractual obligations to indemnify and procure insurance were invalid as contrary to Louisiana statutory law and cannot be enforced." The Court agrees the Contract between Ridgemont and Brookshire is a construction contract within the meaning of §9:2780.1(A)(2)(a), however it appears §9:2870.1 is not applicable in the instant case. Indeed, while the Court agrees with the movants that §9:2870.1 prohibits agreements whereby the party providing indemnity (in this case, contractor Ridgemont) is compelled by contract to indemnify another party (here, grocery store owner Brookshire) against an injury or loss *caused by the fault of the indemnified party* (here, grocery store owner Brookshire), the statute does not invalidate indemnity obligations where the indemnifying party (contractor Ridgemont) is required to indemnify another party (grocery store

---

[7] *See* "Contract and General Conditions" between Brookshire and Ridgemont, filed under seal as an exhibit to Brookshire's opposition brief, Doc. 23, at ¶10.16 (emphasis added).

owner Brookshire) for injuries *resulting from the negligence of the indemnifying party* (contractor

Ridgemont) or its subcontractors over which it has control.  The latter is the agreement contained

within the Contract.  Thus, to the extent Brookshire is seeking indemnification for its *own* acts of

negligence, such agreements for indemnification are null and void under §9:2870.1.  Also void are

agreements whereby the indemnitor (contractor Ridgemont) is required to procure liability insurance

covering the acts or omissions or both of the indemnitee (grocery store owner Brookshire).[8]

However, to the extent Brookshire is seeking indemnification for any acts of negligence *on the part*

*of Ridgemont*, such agreements for indemnification are not invalidated by §9:2870.1, and,

presumably, would be valid.

The distinction between the two scenarios appears to be one without consequence in the

instant matter, however, because as the movants argue in their motion, Louisiana is a pure

comparative fault state, and as such, under Louisiana's comparative fault scheme[9] and the Louisiana

---

[8] *See* La. Rev. Stat. §9:2780.1(C).  However, as the statute provides, "nothing in this Section shall be construed to prevent the indemnitee from requiring the indemnitor to provide proof of insurance for obligations covered by the contract." *Id.*

[9] The parties appear to agree Louisiana's comparative fault scheme is governed by Articles 2324 and 2324.2 of the Louisiana Civil Code.  Article 2323 states:

Art. 2323 Comparative fault

A. In any action for damages where a person suffers injury, death, or loss, the degree or percentage of fault of all persons causing or contributing to the injury, death, or loss shall be determined, regardless of whether the person is a party to the action or a nonparty, and regardless of the person's insolvency, ability to pay, immunity by statute, including but not limited to the provisions of R.S. 23:1032, or that the other person's identity is not known or reasonably ascertainable. If a person suffers injury, death, or loss as the result partly of his own negligence and partly as a result of the fault of another person or persons, the amount of damages recoverable shall be reduced in proportion to the degree or percentage of negligence attributable to the person suffering the injury, death, or loss.

B. The provisions of Paragraph A shall apply to any claim for recovery of damages for injury, death, or loss asserted under any law or legal doctrine or theory of liability, regardless of the basis of liability.

C. Notwithstanding the provisions of Paragraphs A and B, if a person suffers injury, death, or loss

merchant liability statute, Brookshire cannot have liability to the plaintiff on the plaintiff's underlying claim – thereby triggering the need for indemnification – absent actual negligence on its own part.    Thus, the movants argue Brookshire will not be responding to the plaintiff for Ridgemont's fault, and ergo, Brookshire will have no liability in this matter – and no need for indemnification in this case – unless it is determined to be either solely or partially in fault in causing the plaintiff's injuries, a determination that has not yet been made.   Brookshire does not dispute the foregoing.  Thus, the only scenario under which indemnification would be owed to Brookshire would be the scenario under which Brookshire is found to be negligent or otherwise liable to the plaintiff under the merchant liability statute, and under such a scenario, §9:2780.1(B) invalidates that provision of the Contract between Ridgemont and Brookshire requiring Ridgemont to indemnify Brookshire for Brookshire's own negligence.  Conversely, if Brookshire is not found negligent in any degree, there will be no need for indemnification.

Subsumed within the issue of indemnification is Brookshire's attempts to "pass off" any potential liability on its part to Ridgemont as the general contractor of the grocery store.  Under

---

as a result partly of his own negligence and partly as a result of the fault of an intentional tortfeasor, his claim for recovery of damages shall not be reduced.

La. Civ. C. art. 2323.

Article 2324.2 states:

Art. 2324.2. Reduction of recovery

A. When the recovery of damages by a person suffering injury, death, or loss is reduced in some proportion by application of Article 2323 or 2324 and there is a legal or conventional subrogation, then the subrogee's recovery shall be reduced in the same proportion as the subrogor's recovery.

B. Nothing herein precludes such persons and legal or conventional subrogees from agreeing to a settlement which would incorporate a different method or proportion of subrogee recovery for amounts paid by the legal or conventional subrogee under the Louisiana Worker's Compensation Act, R.S. 23:1021, et seq.

La. Civ. C. art. 2324.2.

Louisiana law prior to the 1996 amendments to the comparative fault statutes,[10] Brookshire could, potentially, have been called to respond for Ridgemont's negligence separate and apart from its own negligence. However, after the amendments to the Louisiana comparative fault statutes, each party responds to the plaintiff for its own negligence.

Considering the foregoing, the instant motion – which presumably seeks dismissal of Brookshire's claim for indemnification in the event Brookshire is found either wholly or partially at fault in the underlying lawsuit by the plaintiff – is GRANTED only to the extent that Louisiana law invalidates agreements whereby the indemnitor indemnifies the indemnitee for the indemnitee's own negligence.

### 2.     Insurance

Amerisure issued a policy of insurance to its named insured, Ridgemont, with a policy period from November 1, 2011 to November 1, 2012.  Ridgemont and Amerisure argue the policy of insurance issued by Amerisure to Ridgemont does not name Brookshire as an insured, nor does it name Brookshire as an additional insured, and therefore, there is no coverage for Brookshire under the Amerisure policy for the plaintiff's claims against Brookshire.  Brookshire argues language

---

[10] In *Touro Infirmary v. Sizeler Architects*, 900 So.2d 200, 203 (La. App. 4th Cir. 2005), the court explained, "[the] current version of Article 2323, which was amended and adopted by the Louisiana legislature in 1996, virtually abolished solidary liability among non-intentional tortfeasors and created a pure comparative fault system in Louisiana."  The Louisiana Supreme Court explained the amendments as follows:

> With these 1996 Amendments to Article 2323 and 2324(B)...the legislature has effected a total shift in tort policy. Prior to the enactment of the amendments, the policy behind Louisiana's tort law was ensuring that innocent victims received full compensation for their injuries. Now, however, Louisiana's policy is that the tortfeasor pays only for that portion of the damage he has caused and the tortfeasor shall not be solidarily liable with any other person for damages attributable to the fault of that other person.

*Dumas v. State ex rel. Dept. of Culture, Recreation, and Tourism*, 828 So.2d 530, 548 (La. 2002), *cited in Touro Infirmary*, 900 So.2d at 203-04.

-12-

within the policy does, in fact, confer "coverage" on Brookshire.

An insurer seeking to avoid coverage through summary judgment has the burden of proof that coverage is not provided under the policy. *Collins v. Farris*, 897 So.2d 634, 637-38 (La. App. 1st Cir. 2004), *citing Gaylord Chemical Corp. v. ProPump, Inc.*, 753 So.2d 349, 352 (La. App. 1st Cir. 2000); *Smith v. Terrebonne Parish Consol. Gov't*, 858 So.2d 671, 673 (La. App. 1st Cir. 2003). Summary judgment declaring a lack of coverage under an insurance policy may not be rendered unless there is no reasonable interpretation of the policy, when applied to the undisputed material facts shown by the evidence supporting the motion, under which coverage could be afforded. *Collins*, 897 So.2d at 638, *citing Reynolds v. Select Properties, Ltd.*, 634 So.2d 1180, 1183 (La. 1994); *Brown v. Coregis Ins. Co.*, 752 So.2d 347, 352 (La. App. 1st Cir. 2000).

The movants – Ridgemont and Amerisure – argue, without support or explanation, that because Brookshire is not a named insured or an additional insured "under any additional insured endorsement," the Amerisure policy provides no coverage to Brookshire. As Brookshire does not argue it is a named insured under the policy, the question becomes whether Brookshire is an additional insured under the policy. Brookshire argues application of one provision of the policy – the Contractor's Blanket Additional Insured Endorsement ("the Endorsement") – in support of its argument that it is an additional insured under the Amerisure policy. The Endorsement states:

1.   Section II - **WHO IS AN INSURED is amended to add as an insured any person or organization whom you [Ridgemont] are required to add as an additional insured on this policy under a written contract or written agreement relating to your business. The written contract or written agreement must require additional insured status for a time period during the term of this policy and be executed prior to the "bodily injury," "property damage," or "personal and advertising injury" giving**

-13-

**rise to a claim under this policy** . . .[11]

The Endorsement goes on to <u>limit</u> the coverage provided to additional insureds, as follows:

3.    The insurance provided to the additional insured under this endorsement is **limited** as follows:

        a.    **That person or organization is only an additional insured with respect to liability arising out of**:

                (1) Premises you own, rent, lease, or occupy; or

                (2) **Your ongoing operations, unless the written contract or written agreement also requires completed operations[12] coverage (or writing to the same effect), in which case the coverage provided shall extend to your completed operations for that additional insured.**

---

[11] *See* Amerisure Policy, attached as Exhibit "A" to the movant's motion for summary judgment, Doc. 20, at Bates no. CG 70 85 05 10.

[12] The policy defines "completed operations" as follows:

16. "Products – completed operations hazard":

a. Include all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except:

[ . . . ]

    (2) Work that has not yet been completed or abandoned.  However,"your work" will be deemed completed at the earliest of the following times:

        (a) When all of the work called for in your contract has been completed.

        (b) When all of the work to be done at the job site has been completed if your contract calls for work at more than one job site.

        (c) When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

[ . . . ]

Ongoing operations, as respects this provision, does not apply to "bodily injury" or "property damage" occurring after:

> (a) All work including materials, parts or equipment furnished in connection with such work on the project (other than service, maintenance or repairs) to be performed by or on behalf of the additional insured(s) at the site of the covered operations has been completed; or

> (b) That portion of "your work" out of which the injury or damage arises has been put to its intended use by any person or organization other than another contractor or subcontractor engaged in performing operations for a principal as a part of the same project.[13]

Based on the foregoing, the Endorsement makes clear that the Amerisure policy expressly limits coverage for an additional insured to "liability arising out of . . . . **[y]our ongoing operations, unless the written contract or written agreement also requires completed operations coverage (or writing to the same effect), in which case the coverage provided shall extend to your completed operations for that additional insured.**" Brookshire argues the foregoing language "is reasonably read to provide" coverage because "the Brookshire-Ridgemont contract required coverage for Products – Completed Operations."[14] However, after review of the Contract between Ridgemont and Brookshire, this Court does not agree that the Contract between Ridgemont and Brookshire requires Ridgemont to purchase and maintain "completed operations" coverage.

The Ridgemont/Brookshire Contract requires the following with respect to insurance:

---

[13] *Id.*

[14] *See* Brookshire's opposition brief, Doc. 23, at p. 9.

Article 17 — Insurance

17.1    Contractor's liability insurance shall be purchased and maintained by the Contractor in a company or companies licensed to do business in the state in while the Project is located to protect him from claims under worker's compensation or workers' compensation acts and other employee benefits acts, **claims for damages because of bodily injury, including death, and from claims for damages, other than to the work itself, to property which may arise out of or result from the *Contractor's operations* under this Contract**, whether such operations be by himself or by any subcontractor or anyone directly or indirectly employed by any of them. This insurance shall be written for not less than the limits of liability state within this Contract, or required by law, whichever is the greater, and shall include contractually liability insurance applicable to the Contractor's obligations.

[ . . . ]

17.4    Contractor shall from the date of commencement until date of final acceptance include Brookshire Grocery Company as "Additional Insured" on all Contractors' insurance policies required by this Contract.[15]

Thus, pursuant to the Contract between Ridgemont and Brookshire, Ridgemont was required to include Brookshire as an additional insured under the Amerisure policy, but only from the "date of commencement until date of final acceptance." Furthermore, Ridgemont was required only to purchase insurance to protect Ridgemont from claims for damages because of bodily injury "which may arise out of or result from [Ridgemont's] "operations" under [the] Contract." Although the Contract does not define "operations," this Court interprets the term to mean the actual operations – or "work" – of Ridgemont while the grocery store was being constructed. The Contract *does not require* insurance for damages arising out of the result of *completed operations*, that is, construction that has been completed, particularly as the Amerisure policy defines the term "completed operations." Thus, the language of the contract would not indicate Ridgemont was required to

---

[15] *See* "Contract and General Conditions" between Brookshire and Ridgemont, filed under seal as an exhibit to Brookshire's opposition brief, Doc. 23, at ¶¶17.1 & 17.4 (emphasis added).

purchase and maintain completed operations coverage pursuant to its contract with Brookshire.

Brookshire cites the case of *Supreme Services and Specialty Co., Inc. v. Sonny Greer, Inc.*, 958 So.2d 634 (La. 2007) in support of its argument that completed operations coverage exists. However, this case is inapposite. In *Supreme Services*, the court addressed the issue of whether a CGL policy containing a "work product" exclusion and a "completed operations" provision was inherently ambiguous so as to cancel the "work product" exclusion when the defective work was performed by a subcontractor, or whether the policy created vagueness or possible room for dual interpretation of the policy. Thus, in *Supreme Services*, the existence of completed operations coverage was not questioned, rather, the issue was whether the completed operations provision was ambiguous in light of another provision of the policy. Here, the Contract between Ridgemont and Brookshire controls the issue of whether Ridgemont was required to purchase and maintain completed operations coverage. This Court's review of the applicable language of that Contract suggests the Contract did not require "completed operations" coverage, and therefore, as the policy keys to the contract, this Court finds Brookshire was not an additional insured under the Amerisure policy once and after Ridgemont completed its work and the construction was completed, and this Court notes the parties do not dispute Ridgemont had completed its work at the time the plaintiff was allegedly injured. Considering the foregoing, this Court concludes Brookshire is not an additional insured under the Amerisure policy during the relevant time period.

As Amerisure bears the burden of proof that coverage is not provided under the policy, this Court finds it has made a *prima facie* argument that coverage is not afforded to Brookshire under any provision or endorsement of the Amerisure policy. In response, Brookshire argues the Contractor's Blanket Additional Insured Endorsement provides coverage, however, this Court has found that

argument unpersuasive.  Consequently, this Court concludes there is no coverage for Brookshire under the Amerisure policy, and Ridgemont and Amerisure are entitled to summary judgment dismissing Brookshire's claim for coverage.

**IV.     Conclusion**

Considering the foregoing,

IT IS ORDERED that the "Motion for Summary Judgment" [Doc. 20] filed by third-party defendants The Ridgemont Company ("Ridgemont") and Amerisure Mutual Insurance Company ("Amerisure") is GRANTED, and the following claims are DENIED AND DISMISSED WITH PREJUDICE: (1) Brookshire's claim for tort contribution from Ridgemont; (2) Brookshire's claim for contractual indemnification from Ridgemont; and (3) Brookshire's claim for insurance coverage for the plaintiff's injuries under the Amerisure policy issued to Ridgemont.

It is unclear whether the instant Ruling resolves all claims alleged by Brookshire against Ridgemont and Amerisure.  The parties shall clarify the foregoing in writing, to be filed into the record no later than ten (10) days following receipt of this Ruling and Order.

THUS DONE AND SIGNED in Lafayette, Louisiana, this ___10___ day of March, 2014.


REBECCA F. DOHERTY
UNITED STATES DISTRICT JUDGE